UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Crim No. _13cr 10292-_ |
| | ) | |
| | ) | 15 U.S.C. §§78j(b) & 78ff & *(Boal)* |
| v. | ) | 17 C.F.R. §240.10-b5 (Fraud in |
| | ) | Connection with the Purchase or |
| | ) | Sale of Securities) |
| | ) | 18 U.S.C. §2 (Aiding and Abetting) |
| ROBERT BURTON | ) | 26 U.S.C. §7206(1) Subscribing False |
| Defendant | ) | Tax Returns) |
| | ) | 26 U.S.C. §7206(2) (Procuring False Tax |
| | ) | Returns) |
| | 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. |
| | § 2461 (Criminal Forfeiture) |

## INDICTMENT

The Grand Jury Charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.     ROBERT  BURTON  ("BURTON")  was  an  individual  who  resided  in Massachusetts.

2.     BURTON owned and operated a business that provided various financial services, which business operated under various names, including but not limited to, Pinnacle Financial Consulting, LLC, Pinnacle Strategic Investments, LLC, Pinnacle Asset and Capital Management, LLC, Pinnacle Financial and Legal Solutions, LLC, Pinnacle Management Group, LLC and Pinnacle Holdings, LLC (collectively, "Pinnacle").   Pinnacle maintained offices at various locations in Massachusetts.

1

3.     BURTON and Pinnacle provided various financial services to clients, including tax preparation, investment advising, loan modification, debt consolidation and bankruptcy petition preparation.

4.     BURTON, through Pinnacle, collected fees for these financial services. BURTON also collected funds from clients for the purpose of investment and for the purpose of making loan payments on behalf of clients.

5.     BURTON maintained various bank accounts in the names of various Pinnacle entities, including but not limited to, Bank of America ("Bank of America") Account ********1044 (the "Pinnacle Management Group, LLC account"); Citibank N.A. ("Citibank") Account ******7036 (the "Pinnacle Strategic Investments, LLC account"); and Citibank Account ******6978 (the "Pinnacle Financial Consulting, LLC account").   Bank of America and Citibank were federally insured banks operating in interstate commerce.

### The Fraudulent Scheme Operated by Burton

6.     Beginning not later than in or about 2007, and continuing through in or about May 2013, BURTON obtained not less than $100,000 from various investors by falsely representing that he would invest such monies on behalf of those investors.  In some instances, Burton promised to pay investors guaranteed returns within a short amount of time, usually within 30 days.  In actuality, BURTON did not invest the monies as promised and did not make the promised payments.

2

## Manner and Means of the Fraud

7.      BURTON carried out his fraud by soliciting investors for specific investments and, in some instances, by acting as an investment advisor for the purpose of managing clients' money and making various investments on their behalf.  Upon receiving funds from investors, BURTON routinely deposited the money into his business bank accounts and subsequently made cash withdrawals and also used the money to pay, among other things, business and personal expenses.  In some instances, he did not make payments as promised.  BURTON concealed the misappropriation of investor funds by, among other things, providing investors with false account information, investment updates and checks that ultimately bounced.

### A.C.

8.      A.C., an active duty army chaplain, was introduced to BURTON in or about 2007. During A.C.'s first meeting with BURTON, BURTON advised A.C. that BURTON was working as a financial consultant for Deutsche Bank and that he was providing financial advising services for a number of individuals as a side business.  BURTON offered to open an Individual Retirement Account for A.C. and to invest A.C.'s savings in index funds and a diversified equities portfolio.

9.      Shortly after their first meeting, A.C. gave BURTON $25,000 to invest on his behalf.  BURTON represented to A.C. that he would invest A.C.'s money in a diversified portfolio of publicly traded securities and index funds.

10.     BURTON deposited A.C.'s $25,000 into his Pinnacle Management Group, LLC account.  BURTON did not, however, invest the funds as promised.  A.C.'s funds were instead

3

used to pay, among other things, business and personal expenses.

11.     Following A.C.'s investment, BURTON concealed the misappropriation by, among other things, providing A.C. with oral updates regarding A.C.'s holdings.  BURTON also provided A.C. with false print-outs purporting to detail A.C.'s holdings in various publicly traded stocks and sent A.C. text messages regarding A.C.'s alleged investments.  In 2011, BURTON provided A.C. with log-in credentials for a web site, where A.C. viewed his purported account balance.

**L.C.**

12.     In or about 2010, L.C. and L.C.'s wife, M.C., retained Pinnacle and BURTON to assist with the modification of their mortgage.  In or about August 2010, during their dealings with BURTON regarding the loan modification, BURTON began soliciting them for the purpose of providing investment advisory services as well.

13.     In or about 2011, and pursuant to BURTON's advice and direction, L.C. liquidated approximately $98,000 from his retirement account at Fidelity Investments.  L.C. used a portion of those proceeds to pay his mortgage.  In or about August 2011, L.C. gave BURTON $40,000 to invest on L.C.'s behalf.

14.     BURTON deposited L.C.'s $40,000 into his Pinnacle Strategic Investments, LLC account.  BURTON did not, however, invest the funds as promised.  L.C.'s funds were instead used to pay, among other things, business and personal expenses.

15.     In or about May 2012, L.C. provided BURTON with an additional $35,000 to invest on L.C.'s behalf.

4

16.     BURTON deposited L.C.'s $35,000 into his Pinnacle Financial Consulting, LLC account. BURTON did not, however, invest the funds as promised.  L.C.'s funds were instead used to pay, among other things, business and personal expenses.

17.     Following L.C.'s investments, BURTON concealed the misappropriation by, among other things, providing L.C. with log-in credentials for a web site, where L.C. could view his purported account balance and purported holdings in the "Pinnacle Strategic Investments Ram 2100 Fund," the "U.S. Currency Fund" and the "Pinnacle Debt Portfolio 2020."

### S.H.

18.     Beginning in July 2012, BURTON solicited S.H. for various investments, including investments in "short term" notes.  Among other things, BURTON sent S.H. a series of text messages and responded to a set of written questions describing the investments.

19.     Thereafter, on or about July 31, 2012, S.H. provided BURTON with $40,000 for investment and BURTON provided S.H. with a "Confidential Private Placement Memorandum" and Promissory Note from Pinnacle Strategic Investments, LLC pursuant to which Pinnacle Strategic Investments, LLC agreed to return S.H.'s $40,000 principal and another $40,000 in interest by September 1, 2012.  According to the Confidential Private Placement Memorandum, the proceeds from the offering were to be used for the purchase of a "debt portfolio."

20.     BURTON deposited S.H.'s $40,000 into the Pinnacle Financial Consulting, LLC account.  S.H.'s funds were subsequently used to pay, among other things, business and personal expenses and BURTON did not repay the invested funds, as promised, by September 1, 2012.

5

21.     BURTON concealed the misappropriation by repeatedly assuring S.H. that the money would be forthcoming, and made such re-assurances by e-mail and text message. After S.H. advised that he intended to go to authorities, BURTON returned a fraction of S.H.'s original investment and never made the promised interest payment. BURTON also provided S.H. with checks that bounced when S.H. attempted to deposit them.

### Burton's False Tax Filings

22.     BURTON, through Pinnacle, offered tax preparation services to various clients, including but not limited to, R.T. and R.T.'s wife, B.T., as well as L.C. and L.C.'s wife, M.C.

23.     BURTON prepared the personal tax return (Form 1040) for R.T. and B.T. for the 2008 tax year. As BURTON knew, R.T. and B.T. owned a business from which R.T. and B.T. received more than $300,000 in income during the 2008 tax year. The 2008 tax return that BURTON prepared and filed on behalf of R.T. and B.T. did not include any of that income.

24.     BURTON prepared the personal tax return (Form 1040) for L.C. and M.C. for the 2011 tax year. As BURTON knew, L.C. and M.C. had liquidated approximately $98,000 from L.C.'s retirement account at Fidelity Investments, which distribution was taxable as income to L.C. and M.C. during the 2011 tax year. The 2011 tax return that BURTON prepared and filed on behalf of L.C. and M.C. omitted the approximately $98,000 retirement account distribution.

25.    BURTON also prepared and filed personal tax returns (Form 1040) for himself for the 2008, 2009, 2010 and 2011 tax years.   The tax returns for each of those years substantially understated Pinnacle's gross receipts and thus understated the business income that Burton derived from Pinnacle.   BURTON also falsely claimed two dependents for the 2010 and 2011 tax years.

## COUNTS ONE THROUGH FOUR
### (Securities Fraud – 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. §240.10b-5)

26.     The Grand Jury realleges and incorporates by reference paragraphs 1 – 21 of this Indictment and further charges that:

27.     On or about the following dates, in the District of Massachusetts and elsewhere, the defendant

### ROBERT BURTON,

willfully, by the use of means and instrumentalities of interstate commerce, including internet web pages, mobile text messaging services, electronic mail, and deposits into federally insured banking institutions, did directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of a security in contravention of Rule 10b-5 (17 C.F.R. Section 240.10b-5) of the Rules and Regulations promulgated by the United States Securities and Exchange Commission by:  (a) employing devices, schemes and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading, and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit, in connection with the following purchases and sales of securities:

| Count | Date | Investor | Security |
|---|---|---|---|
| 1 | January 25, 2007 | A.C. | $25,000 of publicly traded securities |
| 2 | August 23, 2011 | L.C. | $40,000 of Pinnacle Strategic Investments Ram 2100 Fund, the U.S. Currency Fund and the Pinnacle Debt Portfolio 2020 |
| 3 | May 17, 2012 | L.C. | $35,000 of Pinnacle Strategic Investments Ram 2100 Fund, the U.S. Currency Fund and the Pinnacle Debt Portfolio 2020 |
| 4 | July 31, 2012 | S.H. | $25,000 interest in Pinnacle Strategic Investments, LLC |

All in violation of 15 U.S.C. §§ 78j(b) and 78ff(a) [Securities and Exchange Act of 1934, Sections 10(b) and 32] and 17 C.F.R. §240.10b-5 [Exchange Act Rule 10b-5], and 18 U.S.C. § 2.

## COUNTS FIVE THROUGH SIX
### (26 U.S.C. §7206(2) – Procuring False Tax Returns)

28.     The Grand Jury realleges and incorporates by reference paragraphs 1 – 25 of this Indictment and further charges that:

29.     On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant

### ROBERT BURTON,

did willfully aid, assist in, and procure, counsel and advise the preparation and presentation of federal Individual Income Tax Returns (Form 1040), which tax returns, as the defendant knew and believed, were fraudulent and false as to material matters as set forth below:

| Count | Tax Payers | Date | Period | False Item(s) |
|-------|-----------|------|--------|---------------|
| 5 | R.T. and B.T. | January 23, 2009 | 2008 Tax Year | Line 17 (Income from S Corporation) |
| 6 | L.C. and M.C. | April 30, 2012 | 2011 Tax Year | Line 15(a) (IRA Distributions) |

All in violation of 26 U.S.C. § 7206(2).

## COUNTS SEVEN THROUGH TEN
### (26 U.S.C. §7206(1) – Subscribing False Tax Returns)

30.     The Grand Jury realleges and incorporates by reference paragraphs 1 – 30 of this Indictment and further charges that:

31.     On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant

**ROBERT BURTON,**

did willfully make and subscribe a return, statement and other document that contained and was verified by a written declaration that it was made under penalties of perjury and that he did not believe to be true and correct as to every material matter as set forth below:

11

| Count | Date | Period | False Item(s) |
|---|---|---|---|
| 7 | January 16, 2009 | Tax year 2008 | Schedule C, Line 1 (Gross Receipts or Sales); Line 22 (Total Income) |
| 8 | May 11, 2010 | Tax year 2009 | Schedule C, Line 1 (Gross Receipts or Sales); Line 22 (Total Income) |
| 9 | February 5, 2011 | Tax year 2010 | Line 12 (Business Income or Loss); Line 22 (Total Income); Line 6(c) (Dependents) |
| 10 | January 17, 2012 | Tax year 2011 | Schedule C, Line 1 (Gross Receipts or Sales); Line 22 (Total Income) Line 6(c) (Dependents) |

All in violation of 26 U.S.C. § 7206(1).

## FORFEITURE ALLEGATIONS
### 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

The Grand Jury further charges that:

32.     The Grand Jury realleges and incorporates by reference paragraphs 1 - 21 of this Indictment and further charges that:

33.     Upon conviction of one or more of Counts One through Four in the Indictment, the defendant,

### ROBERT BURTON,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

34.     If any of the property described in paragraph 33, hereof as being forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction or the Court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be subdivided without difficulty;

13

it is the intention of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 33.

All in accordance with 18 U.S.C. § 981(a)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL,

_____
FOREPERSON OF THE
GRAND JURY

_____
Sarah E. Walters
Assistant U.S. Attorney

_____
Deputy Clerk
10/3/13 @ 12:30pm

15